# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| ALTANA PHARMA AG and WYETH,<br><br>Plaintiffs,<br><br>v.<br><br>TEVA PHARMACEUTICALS USA, INC., et al.,<br>Defendants. | Civil Action No. 04-2355 (JLL)<br><br>OPINION |

**LINARES, District Judge.**

This matter comes before the Court by way of Defendant Teva's motion for partial summary judgment seeking a ruling that Wyeth may not recover profits lost by its Puerto Rican subsidiary [Docket Entry No. 1132]. The Court has considered the submissions made in support of and in opposition to the instant motion. No oral argument was heard. Fed. R. Civ. P. 78. Based on the reasons that follow, Defendant's motion is **denied.**

## BACKGROUND

1.  *General*

This is a patent infringement action to enforce United States Patent No. 4,758,579 ("the '579 patent"). The asserted claims of the '579 patent – claims 22 and 25 – cover a chemical compound named Pantoprazole, and its sodium salt, pantoprazole sodium. Pantoprazole is the active ingredient in PROTONIX®, a drug manufactured for the treatment of gastric acid

1

disorders (hereinafter referred to as "Protonix"). Plaintiff Nycomed GmbH (formerly known as Altana Pharma AG and, at the time of the invention, Byk Gulden) owns the '579 patent. Plaintiff Wyeth (formerly known as American Home Products Corporation) markets and sells Protonix in the United States as Nycomed's exclusive licensee.

Protonix was approved by the FDA on February 2, 2000 and was first marketed to the public in 2000. Defendants Teva, Sun and KUDCo each filed an Abbreviated New Drug Application ("ANDA") pursuant to the Hatch-Waxman Act, seeking FDA approval to sell a generic version of Protonix prior to the expiration of the '579 patent.

In May of 2004, Plaintiffs responded by suing Teva, Sun and KUDCo for infringement of the '579 patent. In addition to seeking equitable relief, Plaintiffs seek lost profits damages and/or reasonable royalty damages pursuant to 35 U.S.C. § 284.

Plaintiffs' motion for a preliminary injunction was denied in September 2007. Defendants Teva and Sun subsequently launched generic pantoprazole products "at risk," i.e., before entry of final judgment on the merits of this litigation, and before the patent expired. Sun, Teva and KUDCo each stipulated to infringement of claims 22 and 25 of the '579 patent *if* those claims were ultimately found to be valid and enforceable.

A jury trial was conducted for several weeks in April 2010 with respect to Defendant Teva and Defendant Sun's affirmative defenses and counterclaims that claims 22 and 25 of the '579 patent are invalid for obviousness and obviousness-type double patenting. Simultaneously, a non-jury trial was conducted with respect to Defendant KUDCo's affirmative defenses and counterclaims. The jury returned a verdict in favor of Plaintiffs as to each issue tried. On July 15, 2010, the Court issued a bench opinion as to Defendant KUDCo. The Court ruled that KUDCo had not demonstrated by clear and convincing evidence that the asserted claims of the

'579 patent are invalid either for obviousness under 35 U.S.C. § 103 or under the judicially created doctrine of obviousness-type double patenting. The parties subsequently began discovery on the remaining issues in the case—damages and Defendants' claims of unenforceability.

The '579 patent expired on July 19, 2010. The FDA awarded Wyeth a period of pediatric exclusivity that expired on January 19, 2011.

2.  *Teva's Motion*

Defendant Teva now moves for partial summary judgment seeking a ruling that Plaintiff Wyeth may not recover profits lost by its Puerto Rican subsidiary. In particular, Teva explains that prior to its launch of generic pantoprazole (on December 21, 2007), the majority of the Protonix tablets sold by Wyeth were manufactured in Puerto Rico by a subsidiary of Wyeth called Wyeth-Whitehall Pharmaceuticals, Inc. ("WWPI"). Teva further claims that, by virtue of the arrangement between Wyeth and WWPI, profits from the sales of Protonix were split between Wyeth and WWPI. Teva maintains that, although this arrangement was later changed in response to Teva's launch, the undisputed evidence shows that absent any generic launch, the profit split would have remained in effect and WWPI would have continued to earn a portion of the profits from the sale of Protonix tablets. Thus, Teva seeks a ruling that any "profits lost by WWPI, which is not a party and lacks standing to recover damages, are not legally compensable" to Wyeth. (Def. Br. at 2).

In opposition, Plaintiffs explain that because Wyeth and WWPI are separate corporate entities, and because Puerto Rico is considered a different country under United States tax law, tax regulations required Wyeth and WWPI to set up "transfer prices" applicable to the

transactions between them for each of the "suite of products" covered by the Main License and Royalty Agreement ("MLRA"), so that each entity could file tax returns in its particular jurisdiction. Plaintiffs further explain that, despite its name, the "transfer pricing" arrangement between Wyeth and WWPI are not specifically associated with the transfer of Protonix, the manufacture or sale of Protonix, the price of Protonix, or Protonix revenues. Rather, Plaintiffs' maintain that transfer pricing reflects a "profit split for an entire suite of products that is done after the sales are made and for the purpose of determining tax liability." (Pl. Opp'n at 7-8). Thus, although the Wyeth/WWPI taxable profit split for Protonix admittedly changed over time, Plaintiffs' maintain that Teva's motion should be denied inasmuch as the undisputed evidence shows that Wyeth paid U.S. taxes on 100% of its pantoprazole profits throughout the entire period of Defendants' infringing sales.

A. *Facts Relevant to Teva's Motion*

Plaintiff Nycomed owns the '579 patent and, at all relevant times, Wyeth held the exclusive license to market and sell pantoprazole in the United States. (SUMF, ¶ 5; RSUMF, ¶ 5).[1] *See generally* October 11, 2012 Opinion, Docket Entry No. 1209. The License Agreement between Nycomed and Wyeth gave Wyeth the right to sublicense its rights to its corporate affiliates. (SUMF, ¶ 6; RSUMF, ¶ 6).

At all times relevant to this motion, Wyeth-Whitehall Pharmaceuticals, Inc. ("WWPI"), incorporated in Puerto Rico, was an indirect subsidiary of Wyeth. (SUMF, ¶¶ 3, 4; RSUMF, ¶¶

---

[1] "SUMF" refers to Teva's Statement of Undisputed Material Facts. "RSUMF" refers to Plaintiffs' Response to Teva's Statement of Undisputed Material Facts. "SAF" refers to Plaintiffs' Statement of Additional Material Facts.

4

3, 4). Effective November 1, 1998, Wyeth entered into an agreement titled "Main License and Royalty Agreement" (the "MLRA") with WWPI, which related to various products manufactured by WWPI. (SUMF, ¶ 7; RSUMF, ¶ 7). Protonix was added to the list of products covered by the MLRA as of February 1, 1999. (SUMF, ¶ 8; RSUMF, ¶ 8). Under the MLRA, Wyeth granted WWPI a non-exclusive license relating to a suite of products covered by the agreement. (SUMF, ¶ 9; RSUMF, ¶ 9). Pursuant to the parties' arrangement, WWPI used pantoprazole compound obtained from Nycomed to manufacture Protonix tablets that were then shipped to Wyeth. (SUMF, ¶ 10; RSUMF, ¶ 10). Wyeth then sold all Protonix tablets to third parties in the United States, including pharmaceutical wholesalers and distributors. (SUMF, ¶ 11; RSUMF, ¶ 11); (SAF, ¶ 16).

According to Plaintiffs, Wyeth has always collected all revenues from sales of Protonix to third parties in the United States. (SAF, ¶ 16). In addition, Plaintiffs maintain that tax regulations required Wyeth and WWPI to set "transfer prices" applicable to interactions between them for each of the suite of products covered by the MLRA so that each entity could file tax returns in its particular jurisdiction. (SAF, ¶¶ 33-34, 41-43). Thus, prior to December 21, 2007, WWPI and Wyeth each recorded a portion of the taxable profit on the suite of products covered by the MLRA, which included Protonix. (SUMF, ¶ 12; RSUMF, ¶ 12). Wyeth's profits were generally subject to corporate income tax in the United States at a rate of 35%. (SUMF, ¶ 14; RSUMF, ¶ 14). WWPI's profits were generally subject to tax in Puerto Rico at a rate of 0-2%. (SUMF, ¶¶ 15, 16; RSUMF, ¶¶ 15, 16).

Plaintiffs' maintain that in fiscal years 2003 through 2007, the transfer price that Wyeth paid WWPI for WWPI-manufactured products was such that approximately 33% of Wyeth's United States profits from sales of WWPI-manufactured products were ultimately booked with

5

WWPI and 67% of Wyeth's United States profits from WWPI-manufactured products were ultimately booked with Wyeth. (SAF, ¶ 63). Plaintiffs also maintain that the transfer price paid by Wyeth to WWPI was also subject to adjustment by the U.S. Internal Revenue Service. (SAF, ¶ 64). According to Plaintiffs, the transfer prices paid by Wyeth to WWPI had no effect on the profit reported in Wyeth's income before tax statements. (SAF, ¶ 46). Rather, Plaintiffs maintain that only after calculating its "Direct Brand Profit" and income before taxes, in accordance with GAAP, did Wyeth allocate its profits for tax purposes based on the Internal Revenue Code and U.S. Internal Revenue Service regulations. (SAF, ¶ 47).

Teva launched its generic pantoprazole product on December 21, 2007. (SUMF, ¶ 19; RSUMF, ¶ 19). On the same day, Wyeth and WWPI entered into a Generic Entry Agreement. (SUMF, ¶ 20; RSUMF, ¶ 20). The Generic Entry Agreement provided that during any period in which certain specified products (including Protonix) faced generic competition, the terms and conditions of the MLRA would be "superseded and replaced in their respective entireties" by the terms and conditions of a Contract Manufacturing Agreement the form of which was attached to the Generic Entry Agreement. (SUMF, ¶ 21; RSUMF, ¶ 21). As a result of, *inter alia*, the Generic Entry Agreement, effective December 21, 2007, Wyeth ceased allocating a portion of its profits to WWPI; instead, it began paying taxes on 100% of the profits from the sale of Puerto Rico-produced Protonix and generic pantoprazole tablets. (SUMF, ¶ 26; RSUMF, ¶ 26). Wyeth's decision to change its arrangement for allocating taxable profits with WWPI was based, at least in part, on the change in risk profile between Wyeth and WWPI resulting from the launch of Teva's generic. (SUMF, ¶ 27; RSUMF, ¶ 27).

Plaintiffs' damages expert, Dr. Christopher A. Vellturo, has performed a calculation of Wyeth's purported lost profits damages. (SUMF, ¶ 31; RSUMF, ¶ 31). According to Teva, Dr.

Vellturo calculated lost profits damages based on a measure of consolidated profit for the entire Wyeth Group (including both Wyeth and WWPI), rather than calculating lost profits for Wyeth as an individual entity. (SUMF, ¶ 32). According to Plaintiffs, Dr. Vellturo calculated Wyeth's lost profits damages caused by Defendants' infringement using Wyeth's "Direct Brand Profit" measurements based on calculations done according to GAAP. (RSUMF, ¶ 32).

Teva and Sun's expert, Dr. Brian Becker, opines that absent Teva's and Sun's launch of generic pantoprazole, Wyeth and WWPI would have continued to split profits on the sale of Puerto Rico-produced Protonix tablets, such that WWPI would have earned a portion of the profits on these tablets. (SUMF, ¶ 33; RSUMF, ¶ 33).

## LEGAL STANDARD

Summary judgment is appropriate when, drawing all reasonable inferences in the non-movant's favor, there exists no "genuine dispute as to any material fact" and the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *King Pharm., Inc. v. Eon Labs, Inc.*, 616 F.3d 1267, 1273 (Fed. Cir. 2010).

The moving party is entitled to judgment as a matter of law when the non-moving party fails to make "a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). However, if a reasonable juror could return a verdict for the non-moving party regarding material disputed factual issues, summary judgment is not appropriate. *See Anderson*, 477 U.S. at 248-49 ("At the summary judgment stage, the trial judge's function is not himself to weigh the evidence and

determine the truth of the matter but to determine whether there is a genuine issue for trial."). With this framework in mind, the Court turns now to Teva's motion.

## ANALYSIS

As previously stated, Teva moves for partial summary judgment seeking a ruling that Wyeth may not recover profits lost by its Puerto Rican subsidiary, WWPI. In particular, Teva maintains that (a) in the appropriate "but for" infringement world, Wyeth would have continued to allocate a portion of its profits from the sale of Protonix to WWPI; and (b) Wyeth may not, in this action, recover the portion of profits that would have been made by WWPI. Although the parties' briefs raise a number of issues, the real issue before the Court is rather discreet—namely, whether Plaintiffs must, for purposes of recovering lost profits damages, take into account how Wyeth *would have* allocated its income from lost Protonix sales *for tax purposes* in the appropriate "but for" infringement world.[2] Based on the reasons that follow, the Court finds that Teva's motion must be denied because Teva has failed to convince the Court that satisfying the "but for" test requires, *as a matter of law*, that the party seeking lost profits take into account how it would have treated its income for tax purposes absent infringement.

1.   *Relevant Law*

Damages in patent infringement cases are governed by 35 U.S.C. § 284, which provides:

> Upon finding for the claimant the court shall award the claimant damages adequate to compensate for the infringement, but in no

---

[2] The Court recognizes that Teva has not necessarily framed the issue as such. Nevertheless, having carefully reviewed the parties' submissions, the Court finds that the crux of Teva's motion turns on this question.

8

event less than a reasonable royalty for the use made of the invention by the infringer, together with interest and costs as fixed by the court.

35 U.S.C. § 284. "Thus, the language of the statute is expansive rather than limiting. It affirmatively states that damages must be adequate, while providing only a lower limit and no other limitation." *Rite-Hite Corp. v. Kelley Co., Inc.*, 56 F.3d 1538, 1544 (Fed. Cir. 1995). The United States Supreme Court has clarified that, in enacting § 284, "Congress sought to ensure that the patent owner would in fact receive full compensation for 'any damages' he suffered as a result of the infringement." *Gen. Motors Corp. v. Devex Corp.*, 461 U.S. 648, 654-655 (1983).

Generally speaking, the availability of lost profits is a question of law. *Mars, Inc. v. Coin Acceptors, Inc.*, 527 F.3d 1359, 1365 (Fed. Cir. 2008). However, "the correct measure of damages is a highly case-specific and fact-specific analysis." *Id.* at 1366; *see generally Rite-Hite*, 56 F.3d at 1546 ("[T]he question of legal compensability is one 'to be determined on the facts of each case upon mixed considerations of logic, common sense, justice, policy and precedent.' ").

To recover lost profits damages, "the patentee must show a reasonable probability that, 'but for' the infringement, it would have made the sales that were made by the infringer." *Rite-Hite*, 56 F.3d at 1545.[3] In other words, the question to be asked in determining damages is "had the Infringer not infringed, what would the Patentee Holder-Licensee have made?" *Id.* (citation omitted). The "but for" inquiry "requires a reconstruction of the market, as it would have developed absent the infringing product," in order to determine what the patentee would have made. *Grain Processing Corp. v. Am. Maize-Prods. Co.*, 185 F.3d 1341, 1350 (Fed. Cir. 1999);

---

[3] *See generally Crystal Semiconductor Corp. v. TriTech Microelectronics Int'l, Inc.*, 246 F.3d 1336, 1354 (Fed. Cir. 2001) ("Thus, a patentee may obtain lost profit damages for that portion of the infringer's sales for which the patentee can demonstrate 'but for' causation and reasonable royalties for any remaining infringing.").

9

*but see State Indus., Inc. v. Mor-Flo Indus., Inc.*, 883 F.2d 1573, 1577 (Fed. Cir. 1989) ("But '[t]he patent holder does not need to negate all possibilities that a purchaser might have bought a different product or might have foregone the purchase altogether.' ").

One way to establish "but for" causation is to meet the four-part test pronounced in *Panduit Corp. v. Stahlin Bros. Fibre Works*, 575 F.2d 1152, 1156 (6th Cir. 1978). *Kearns v. Chrysler Corp.*, 32 F.3d 1541, 1551 (Fed. Cir. 1994). To recover under the *Panduit* test, the patent owner must prove:

> (1) a demand for the patented product,
> (2) an absence of acceptable noninfringing substitutes,
> (3) manufacturing and marketing capability to exploit the demand, and
> (4) the amount of profit the patent owner would have made.

*Panduit*, 575 F.2d at 1156. However, "*Panduit* is not the *sine qua non* for proving 'but for' causation. If there are other ways to show that the infringement in fact caused the patentee's lost profits, there is no reason why another test should not be acceptable." *Rite-Hite*, 56 F.3d at 1548. In this regard, the Federal Circuit has made clear that "other fact situations may require different means of evaluation, and failure to meet the *Panduit* test does not *ipso facto* disqualify a loss from being compensable." *Id.* ("If there are other ways to show that the infringement in fact caused the patentee's lost profits, there is no reason why another test should not be acceptable."). Thus, so long as a particular injury was or should have been "reasonably foreseeable by an infringing competitor in the relevant market, broadly defined, that injury is generally compensable absent a persuasive reason to the contrary." *Id.* at 1546.

Ultimately, it is the patent owner's burden to prove that "it actually lost sales or that at least such inference is reasonable from all of the evidence. That is the essence of a lost profits damage award." *SmithKline Diagnostics, Inc. v. Helena Laboratories Corp.*, 926 F.2d 1161, 1166 (Fed. Cir. 1991). But if the amount of the damages "cannot be ascertained with precision,

10

any doubts regarding the amount must be resolved against the infringer." *Lam, Inc. v. Johns-Manville Corp.*, 718 F.2d 1056, 1065 (Fed. Cir. 1983).

2. *Analysis*

According to Teva, there is no genuine dispute that Wyeth is seeking to recover not only its own alleged profits, but also profits that would have been earned by WWPI absent infringement. (Def. Reply Br. at 1). Stated differently, Teva maintains that the issue is "whether Wyeth may recover lost profits of the entire Wyeth Group—that is Wyeth's alleged lost profits plus WWPI's lost profits—or whether Wyeth is limited to recovery of its own lost profits as an individual entity." (Def. Reply Br. at 11).

As a general matter, the Court agrees with Teva that Wyeth may not recover lost profit damages based on sales made by its subsidiary, WWPI. *See, e.g., Poly-America, L.P. v. GSE Lining Tech.*, 383 F.3d 1303, 1311 (Fed. Cir. 2004) ("The patentee needs to have been selling some item, the profits of which have been lost due to infringing sales, in order to claim damages consisting of lost profits."); *Mars*, 527 F.3d at 1367 (affirming district court's finding that patent holder was not entitled to lost profit damages based on the sales of its subsidiary where the evidence revealed simply a "traditional royalty-bearing" arrangement between the two entities). But there is no real dispute that the lost sales at issue in this case are sales of Protonix that were made or would have been made by Wyeth in the United States—not by WWPI (to the extent WWPI even made any sales). *See* SUMF, ¶¶ 10, 11; RSUMF, ¶¶ 10, 11. Nor is there any dispute that Wyeth was, at all relevant times, the exclusive licensee of the patent-in-suit and thus has standing to sue for its infringement. *See* October 11, 2012 Opinion, Docket Entry No. 1209. Thus, Teva's reliance on *Poly-America, Mars* and *Spine Solutions, Inc. v. Medtronic Sofamore*

*Danek USA, Inc.*, 620 F.3d 1305 (Fed. Cir. 2010)—where the Federal Circuit, in each case, concluded that the entity that actually made the sales at issue lacked standing to sue for patent infringement—is misplaced.

The Court also disagrees with the particular way in which Teva has presented the relevant issue. Having carefully considered the parties' submissions, the Court finds that the issue is not whether Wyeth may recover profits that would have been earned by WWPI; rather, the issue is whether the applicable "but for" test requires, *as a matter of law*, that the party seeking lost profits take into account how it would have treated its income for tax purposes absent infringement. In this regard, Teva's motion, in essence, seeks a ruling that, for purposes of recovering lost profits damages, a party is only entitled to the lost *taxable* income (or profits) it would have made in the appropriate "but for" infringement world. But Teva cites to no legal authority, binding or otherwise, for this specific proposition. To the contrary, the Federal Circuit has held that "[t]o recover lost profits damages, 'the patentee must show a reasonable probability that, "but for" the infringement, it would have made the sales that were made by the infringer.' " *Rite-Hite*, 56 F.3d at 1545. Thus, the Federal Circuit has framed the relevant test that must be met in order to recover lost profits damages in terms of whether the party seeking such damages demonstrates that it would have "made the sales that were made by the infringer," not in terms of how that party chose to allocate or would have allocated its income (or profits) for tax purposes.

There is evidence in the record upon which a reasonable jury could conclude that Wyeth earned all profits from the sale of Protonix and then subsequently directed a portion of said profits to WWPI for tax purposes. (SAF, ¶ 16) (Ruiz Decl., Ex. 73, Boardman Dep. Tr. at 134:8-25) (identifying Wyeth as the entity that receives all revenues and/or profits from the sale of Protonix tablets); (Ruiz Decl., Ex. 108, Levitt Dep. Tr. at 198:4-17 ("Revenues do not come to

12

WPI, but go directly to Wyeth."); (Ruiz Decl., Exs. 90) ("WHEREAS, Pfizer, Wyeth LLC, WPI and the Commissioner have agreed, solely with respect to the Wyeth audit years, that Wyeth's taxable income should be increased and that WWPI's/WCI's income should be decreased for federal income tax purposes as a result of allocations under section 482 of the Code between Wyeth and WWPI or WPCI, as appropriate"). That Wyeth chose, for a period of time pre-infringement, to pass a portion of the profits it earned to WWPI is relevant to how Wyeth was treated for tax purposes during the relevant years; however, as stated above, Teva cites to no authority for the proposition that Wyeth's tax treatment is relevant to the remedies it seeks under 35 U.S.C. § 284.

Moreover, as a practical matter, the Court finds that such an approach of limiting lost profits to lost *taxable* profits is far too speculative in nature and would be difficult to calculate inasmuch as Wyeth's deductions, losses and other offsets would affect its tax status in any given year and would need to be assessed and/or projected for each year in question. *See, e.g., Hughes Aircraft Co. v. United States*, 86 F.3d 1566, 1575 (Fed. Cir. 1996) (noting that reducing an award of lost profits damages by prior years' taxes "would be speculative due to Hughes' particular tax situation, including what actions [it] might have taken to reduce such taxes in prior years."). Finally, the Federal Circuit has made clear that any doubts regarding the amount of damages, including but not limited to lost profits damages, "must be resolved against the infringer." *Lam*, 718 F.2d at 1065.

For all of these reasons, the Court finds that Teva, as the movant, has failed to meet its burden of establishing that Wyeth is required, as a matter of law, to take into account how it would have treated its income from sales of Protonix for tax purposes, absent infringement, in order to satisfy the applicable "but for" test. Stated differently, Teva has failed to meet its

burden of convincing the Court that Wyeth is precluded, as a matter of law, from recovering the portion of its profits from the sale of Protonix that it had allocated to WWPI for tax purposes pre-infringement.

To be clear, the Court makes no finding as to (a) Wyeth's entitlement to lost profits damages, (b) the appropriate amount or scope of any such award, or (c) that Wyeth's allocation of revenues from the sale of Protonix to WWPI was, in fact, done for tax purposes—these are questions of fact that must be presented to the jury at the time of trial. The Court simply finds that a reasonable jury *could* conclude that but for Defendants' infringement, Wyeth would have earned all profits from all lost Protonix sales in the United States, notwithstanding Wyeth's history of subsequently allocating a portion of such profits to WWPI for purported tax purposes. Teva cites to no legal authority demonstrating that such a theory—*if proven*—is legally impermissible.

The Court agrees with Teva that the ultimate question to be decided at trial is what, if any, damages has Wyeth suffered as a result of Defendants' infringement. Teva will presumably attempt to prove its theory—namely, that to the extent Wyeth proves it is entitled to any lost profits, it should not recover 100% of said profits given that in *Teva's* proposed hypothetical "but for" infringement world, Wyeth would have continued to split a portion of said profits with WWPI.[4] On the other hand, Plaintiffs will presumably attempt to prove their theory—that Wyeth should recover 100% of any lost profits it proves entitlement to because in *Plaintiffs'*

---

[4] (SAF, ¶ 68) ("In late 2007, and *in response to* Defendants' infringement of the '579 patent, Wyeth re-evaluated the transfer prices it paid WWPI in connection with Protonix.") (emphasis added); (Ruiz Decl., Ex. 83, Nelson Dep. Tr. at 196:7-21) (stating that Wyeth's decision to change the transfer pricing arrangement it had with WWPI was made because "the generic entrant changed the risk profile between these two companies"); (SUMF, ¶¶ 26, 27); (RSUMF, ¶¶ 26, 27).

hypothetical "but for" world, Wyeth was the exclusive licensee of the patented product, made all sales of the patented product, and collected all revenues from all sales of the patented product.[5] Both sides have come forward with evidence, including expert reports,[6] to support their theory of damages, and both sides should have an opportunity to present their respective theories to the jury.

## CONCLUSION

For the reasons set forth above, Teva's motion for partial summary judgment [Docket Entry No. 1132] seeking a ruling that Wyeth may not recover profits lost by its Puerto Rican subsidiary WWPI [Docket Entry No. 1132] is **denied**. An appropriate Order accompanies this Opinion.

Date: February 11, 2013

s/ Jose L. Linares
Jose L. Linares
United States District Judge

---

[5] (SAF, ¶ 16); (Ruiz Decl., Ex. 73, Boardman Dep. Tr. at 134:8-25) (identifying Wyeth as the entity that receives all revenues and/or profits from the sale of Protonix tablets); (Ruiz Decl., Ex. 108, Levitt Dep. Tr. at 198:4-17 ("Revenues do not come to WPI, but go directly to Wyeth."); (Ruiz Decl., Ex. 90, W16407889-90) ("WHEREAS, Pfizer, Wyeth LLC, WPI and the Commissioner have agreed, solely with respect to the Wyeth audit years, that Wyeth's taxable income should be increased and that WWPI's/WCI's income should be decreased for federal income tax purposes as a result of allocations under section 482 of the Code between Wyeth and WWPI or WPCI, as appropriate").

[6] *See* Ruiz Decl., Ex. 63 (containing opening report of Plaintiffs' expert, Christopher Vellturo, Ph.D.); Hoffman Decl., Ex. 24 (containing report of Teva's expert, Brian C. Becker, Ph.D.). Although Plaintiffs argue that "the parties have a dispute of fact as to the appropriate profit accounting measure to apply in this case," Teva, the movant, concedes that "this motion does not involve a dispute regarding profit accounting methods." (Def. Reply at 10 n. 7). Thus, the Court declines to weigh in on this issue at this time. *See generally Mars*, 527 F.3d at 1374 ("The selection of the appropriate method of profit accounting in the circumstances is properly left to the broad discretion of the district court.").