UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| ALTANA PHARMA AG and WYETH,<br><br>Plaintiffs,<br><br>v.<br><br>TEVA PHARMACEUTICALS USA, INC., et al.,<br><br>Defendants. | Civil Action No. 04-2355 (JLL)<br><br>OPINION |

**LINARES, District Judge.**

This matter comes before the Court by way of Defendants' motion for partial summary judgment seeking a ruling that Altana is not entitled to recover consequential damages based on a purported financial injury to Altana's immediate corporate parent, Nycomed Germany Holding GmbH ("Germany Holding"). The Court has considered the submissions made in support of and in opposition to the instant motion, and decides this matter without oral argument pursuant to Fed. R. Civ. P. 78. For the reasons set forth below, Defendants' motion is **granted**.

## BACKGROUND

1.  *General*

This is a patent infringement action to enforce United States Patent No. 4,758,579 ("the '579 patent"). The asserted claims of the '579 patent – claims 22 and 25 – cover a chemical compound named Pantoprazole, and its sodium salt, pantoprazole sodium. Pantoprazole is the active ingredient in PROTONIX®, a drug manufactured for the treatment of gastric acid

1

disorders (hereinafter referred to as "Protonix"). Plaintiff Altana Pharma AG ("Altana") owns the '579 patent.[1] Plaintiff Wyeth (formerly known as American Home Products Corporation) markets and sells Protonix in the United States as Nycomed's exclusive licensee.

Protonix was approved by the FDA on February 2, 2000 and was first marketed to the public in 2000. Defendants Teva, Sun and KUDCo each filed an Abbreviated New Drug Application ("ANDA") pursuant to the Hatch-Waxman Act, seeking FDA approval to sell a generic version of Protonix prior to the expiration of the '579 patent.

In May of 2004, Plaintiffs responded by suing Teva, Sun and KUDCo for infringement of the '579 patent. In addition to seeking equitable relief, Plaintiffs seek consequential damages, lost profits damages and/or reasonable royalty damages pursuant to 35 U.S.C. § 284.

Plaintiffs' motion for a preliminary injunction was denied in September 2007. Defendants Teva and Sun subsequently launched generic pantoprazole products "at risk," i.e., before entry of final judgment on the merits of this litigation, and before the patent expired. Sun, Teva and KUDCo each stipulated to infringement of claims 22 and 25 of the '579 patent *if* those claims were ultimately found to be valid and enforceable.

A jury trial was conducted for several weeks in April 2010 with respect to Defendant Teva and Defendant Sun's affirmative defenses and counterclaims that claims 22 and 25 of the '579 patent are invalid for obviousness and obviousness-type double patenting. Simultaneously, a non-jury trial was conducted with respect to Defendant KUDCo's affirmative defenses and counterclaims. The jury returned a verdict in favor of Plaintiffs as to each issue tried. On July 15, 2010, the Court issued a bench opinion as to Defendant KUDCo. The Court ruled that KUDCo had not demonstrated by clear and convincing evidence that the asserted claims of the

---

[1] Altana is the former name of Nycomed GmbH. In prior opinions, the Court has referred to Altana as "Nycomed." In light of the issues presented in the instant motion, however, the Court will refer to Altana as "Altana" to avoid confusion.

2

'579 patent are invalid either for obviousness under 35 U.S.C. § 103 or under the judicially created doctrine of obviousness-type double patenting. The parties subsequently began discovery on the remaining issues in the case—damages and Defendants' claims of unenforceability.

The '579 patent expired on July 19, 2010. The FDA awarded Wyeth a period of pediatric exclusivity that expired on January 19, 2011.

2. *Defendant's Motion*

Defendants Teva and Sun move for summary judgment on the issue of Altana's entitlement to recover as consequential damages the $99.6 million portion of the costs and fees that Germany Holding paid in connection with Nycomed Group ("Nycomed")'s modification of a multibillion Euro loan that Nycomed obtained in 2007 to acquire Altana. Defendants maintain that Altana is not entitled to recover the debt restructuring costs and fees that Germany Holding paid in connection with the loan modification for the following reasons: (1) Altana lacks standing to recover any portion of Germany Holding's debt restructuring costs and fees because it was never a party to any loan agreement, and did not, itself, have a legal obligation to pay any of the costs and fees that Germany Holding incurred as a result of Nycomed's debt restructuring; (2) even if Altana had incurred a portion of Germany Holding's incurred costs and fees, it has failed to show that Defendants' infringement of the '579 patent was a proximate cause of such costs and fees; and (3) Altana cannot establish that Defendants' infringement was an actual (i.e., a "but for") cause of Germany Holding's incurred costs and fees.

A.  *Facts Relevant to Defendants' Motion*[2]

On or about January 1, 2007, Altana was acquired by Nycomed, a privately held European pharmaceutical company consisting of a parent corporation (Nycomed SCA, SICAR) with direct and indirect subsidiaries. (RSUMF ¶ 2.) To finance the acquisition of Altana, several Nycomed subsidiaries entered into a loan agreement ( the "Senior Facilities Agreement" or "SFA") with a syndicate of banks in or around December 2006. (*Id.* ¶ 12.) Pursuant to the SFA, this syndicate of banks made a total of €5.7 billion in loan funds available to Nycomed-affiliated entities to finance the acquisition of Altana. (*Id.*) Germany Holding, one of Nycomed's subsidiaries, was a party to the SFA, but Altana was not. (*Id.* ¶¶ 14-15.) Nor was Altana added as a borrower or a guarantor after the acquisition. (*Id.* ¶ 14.)

Following Nycomed's acquisition of Altana, Altana became a subsidiary of Germany Holding. (*Id.* ¶ 3.) Although Nycomed could have merged Germany Holding and Altana into a single entity, it did not do so for tax and business purposes. (*See id.* ¶ 7; *see also* SUMF ¶ 7.) Instead, Germany Holding and Altana formed a legal relationship known as an *Organschaft*, or "fiscal unity" in English. (SAF ¶ 31.) According to Plaintiffs, German law required Altana to transfer its profits to Germany Holding as a result of these entities' legal relationship. (SAF ¶ 36.) In spite of their having formed an *Organschaft*, there is no dispute that "Altana and Germany Holding are separate corporate entities under German corporate law," (RSUMF ¶ 4), "maintain separate financial statements and are required to file separate income tax returns under German law." (*Id.* ¶ 5).

---

[2] The facts set forth herein are taken from Defendants' Statement of Undisputed Material Facts ("SUMF"), Plaintiff's Response to Defendants' SUMF ("RSUMF"), and Plaintiffs' Statement of Additional Facts ("SAF"). These are the facts the Court deems relevant for the purpose of deciding Defendants' motion. It has construed these facts in the light most favorable to Altana.

4

The SFA contained a "leverage covenant" provision, which specified that the ratio of Nycomed's "Total Net Debt" to "EBITDA" (defined as earnings before interest, taxes, depreciation and amortization) at the end of each quarter could not exceed a predetermined figure. (RSUMF ¶ 15.) A breach of the covenant would have constituted a default under the SFA, resulting in a higher interest rate for the duration of default and potentially allowing the bank syndicate to accelerate the remaining loan balance. (MMH Decl. Ex. 36 (SFA) at AP00670974-75.)

Nycomed complied with the leverage covenant throughout 2007, 2008 and 2009. (RSUMF ¶ 17.) In January 2010, Nycomed's Chief Financial Officer Runar Bjorklund described several factors that had negatively impacted Nycomed's finances in a letter to creditors. (*Id.* ¶ 19.) These factors included Teva and Sun's at risk launch of the generic Pantoprazole in the United States in 2007 and 2008, "economic turmoil," exchange rate volatility, overstocking in the channel in Nycomed's Mexican operations, and increased investment in key products to maintain long-term profitability. (*Id.*) Bjorklund's letter also observed that in light of the negative impact to Nycomed's finances, Nycomed's 2010 and 2011 financial covenants had become "excessively restrictive." (*Id.*)

In March 2010, Nycomed requested that its lenders waive the leverage covenant for the first quarter of 2010. (RSUMF ¶ 20.) Nycomed's lenders granted this request, but required payment of a "consent fee" of 10 basis points (i.e., 0.1% of the loan amount). (*Id.* ¶ 21.)

In the second quarter of 2010, Nycomed began discussions with its lenders about a package of amendments to the SFA which was described in a presentation to the lenders dated June 1, 2010. (*Id.* ¶ 22.) After negotiations, the lenders ultimately agreed to a package of amendments that included a reset of the leverage covenant. (*Id.* ¶ 24.) In connection with the

loan amendment, the Nycomed borrowers were required to pay a one-time amendment fee of 75 basis points (0.75%) and the interest rate on the debt was increased by 150 basis points (1.5%). (*Id.* ¶ 25.) Nycomed and its lenders signed an amended SFA on July 7, 2010. (*Id.* ¶ 24.)

Altana seeks as "consequential damages" the portion of the consent fees and increased interest that Germany Holding paid – i.e., $99.6 million. (*See* RSUMF ¶ 27.) According to Christian Siedlin, the Senior Vice President of Corporate Finance for Nycomed during the relevant period, there would have been no need for Nycomed to seek a waiver of the leverage covenant or to restructure its debt absent Defendants' infringement of the '529 patent. (SAF ¶ 50.) Runar Bjorklund similarly testified during his deposition. (*Id.* ¶ 51.) Altana asserts that documents dated around the time of the loan restructuring support its claim that Defendants' infringement of the '529 patent caused Nycomed to seek a modification of the SFA. (*Id.* ¶¶ 52, 55-57.)

## **LEGAL STANDARD**

1.  *Federal Rule of Civil Procedure 56*

Summary judgment is appropriate when, drawing all reasonable inferences in the non-movant's favor, there exists no "genuine dispute as to any material fact" and the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *King Pharm., Inc. v. Eon Labs, Inc.*, 616 F.3d 1267, 1273 (Fed. Cir. 2010).

The moving party is entitled to judgment as a matter of law when the non-moving party fails to make a "sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). However, if a

reasonable juror could return a verdict for the non-moving party regarding material disputed factual issues, summary judgment is not appropriate. *See Anderson*, 477 U.S. at 248-49 ("At the summary judgment stage, the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.").

2. *35 U.S.C. § 284*

Damages in patent infringement cases are governed by 35 U.S.C. § 284, which provides:

> Upon finding for the claimant the court shall award the claimant damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer, together with interest and costs as fixed by the court.

"Thus, the language of the statute is expansive rather than limiting. It affirmatively states that damages must be adequate, while providing only a lower limit and no other limitation." *Rite-Hite Corp. v. Kelley Co., Inc.*, 56 F.3d 1538, 1544 (Fed. Cir. 1995). The United States Supreme Court has clarified that, in enacting § 284, "Congress sought to ensure that the patent owner would in fact receive full compensation for 'any damages' he suffered as a result of the infringement." *Gen. Motors Corp. v. Devex Corp.*, 461 U.S. 648, 654-55 (1983).

## ANALYSIS

In determining whether Altana is entitled to recover the costs and fees that Germany Holding incurred in connection with the restructuring of Nycomed's loan, the Court will consider only whether Altana has standing to recover the debt restructuring costs and fees incurred by Germany Holding.[3]

---

[3] The Court will not address whether Defendant's infringement was an actual or proximate cause of the costs and fees that Germany Holding incurred in connection with Nycomed's debt restructuring because it is apparent to the Court that Altana lacks standing to recover for any injury to Germany Holding.

7

*1. Altana's Standing*

It is well settled that "[o]nly a patent owner or an exclusive licensee can have constitutional standing to bring an infringement suit" and recover damages resulting from infringement. *See Mars, Inc. v. Coin Acceptors, Inc.*, 527 F.3d 1359, 1367 (Fed. Cir. 2008); *see also Poly-America, L.P. v. GSE Lining Tech.*, 383 F.3d 1303, 1311 (Fed. Cir. 2004) ("Section 284 of Title 35 of the United States Code provides that <u>a patentee</u> shall be awarded 'damages adequate to compensate for the infringement.'") (emphasis added); *cf. id.* at 1311 ("[T]he <u>patentee</u> needs to have been selling some item, the profits of which have been lost due to infringing sales, in order to claim damages consisting of lost profits.") (emphasis added).

In this case, there is no dispute that Germany Holding is neither the owner of the '529 patent nor an exclusive licensee. There is also no dispute that Germany Holding cannot recover any damages it may have suffered for the infringement of the '529 patent. Indeed, Germany Holding is not even a party to this litigation.

Altana, nevertheless, seeks to recover the $99.6 million in costs and fees that Germany Holding paid in connection with Nycomed's debt restructuring on the theory that "a plaintiff may recover for the losses nominally suffered by an affiliate where their business relationship essentially merges their financial existence." (Pl. Br. Opp'n. at 10.) Specifically, Altana claims that it should be able to recover the debt restructuring costs and fees that Germany Holding incurred because it merged its financial existence with that of Germany Holding by forming an "*Organschaft*" or "fiscal unity" – a type of entity recognized under German law for which Altana claims there is no U.S. equivalent. According to Altana, the *Organschaft* relationship legally required it "to transfer its entire profit to Germany Holding." (Pl. Br. Opp'n at 11). Thus,

Altana maintains that it and "and Germany Holding are not separate corporate entities," but instead "are akin to divisions of a single corporation." (*Id.* at 12.)

It is an established legal principle that a patent holder is generally not entitled to recover damages suffered by an affiliated entity as a result of an infringement of the patent holder's patent. *See Poly-America*, 383 F.3d at 1311 (holding that patent holder could not recover damages suffered by its affiliate because patent holder and affiliate "may not enjoy the advantages of their separate corporate structure and, at the same time, avoid the consequential limitations of that structure"); *Mars*, 527 F.3d at 1367 (holding that parent patent holder could not recover lost profits of wholly owned subsidiary despite the fact that the parent and subsidiary maintained consolidated financial statements); *cf. Spine Solutions, Inc. v. Medtronic Sofamor Danek USA, Inc.*, 620 F.3d 1305, 1317-18 (Fed. Cir. 2010) (holding that patent holder could not recover any profits lost by its parent and sister corporations).

The Federal Circuit, however, has not foreclosed the possibility that a patent holder may recover damages suffered by a related entity under certain exceptional circumstances. In *Poly-America*, for example, the court did not foreclose the possibility that a patent holder may be able to recover a related entity's damages if the patent holder and the related entity are separate "divisions of a single corporation." *See Poly-America*, 383 F.3d at 1311. Similarly, the *Mars* court left open the possibility that a patent holder may recover its subsidiary's lost profits when the subsidiary's profits "flow inexorably up to" the parent patent holder. *See Mars*, 527 F.3d at 1367. Notably, however, the *Mars* court left this question unanswered. *Id.* (noting that the court "need not decide whether a parent company can recover on a lost profits theory when profits of a subsidiary actually *do* flow inexorably up to the parent.").

Here, this Court is neither persuaded that Altana and Germany Holding should be considered a single entity as a result of their *Organschaft* relationship, nor that this case presents exceptional circumstances of the type the *Mars* and *Poly-America* courts recognized may allow a patent holder to recover the damages suffered by an affiliate as a result of infringement.

First, Plaintiffs have conceded that Altana and Germany Holding are separate corporate entities, notwithstanding their assertion that German tax law treats them as one. (RSUMF ¶ 4.) Additionally, Plaintiffs have acknowledged that Altana and Germany Holding maintain separate financial statements and file separate tax returns. (RSUMF ¶ 5.) Plaintiffs have also acknowledged that Altana is not contractually obliged to assume the debts of Germany Holding. (RSUMF ¶ 6.) Accordingly, the Court sees no basis to consider Altana and Germany Holding as anything other than separate corporate entities.

Second, even if this Court were to consider Altana and Germany Holding as separate divisions of a single corporation, it would not necessarily follow that Altana would be entitled to recover Germany Holding's incurred debt restructuring costs and fees. No party has cited, and this Court is unaware of, any Federal Circuit or Supreme Court decision compelling such a result.

Third, Altana and Germany Holding must live with the consequences of not merging into a single entity following Nycomed's acquisition of Altana in 2007. As the Federal Circuit has explained, a patent holder and its affiliates "may not enjoy the advantages of their separate corporate structure and, at the same time, avoid the consequential limitations of that structure." *Poly-America*, 383 F.3d at 1311. Although Nycomed could have merged Altana and Germany holding into a single entity, (*see* RSUMF ¶ 7), it did not do so for the purpose of obtaining certain tax and business advantages. In accordance with Federal Circuit precedent, Altana and

Germany Holding may not enjoy the advantages of their separate corporate structure and also claim to be a single entity for the purpose of calculating the damages to which Altana is entitled in this patent infringement matter. *See Poly-America*, 383 F.3d at 1311.

Finally, even accepting the truth of Altana's claim that "there is an inexorable flow of profits and losses between Germany Holding and [Altana]," the Court is not persuaded that such a fact would entitle Altana to recover for any injury to Germany Holding. Altana's reliance on *Mars* for the proposition that it is entitled to recover Germany Holding's incurred costs and fees because "there is an inexorable flow of profits and losses between Germany Holding and [Altana]" is misguided for two reasons. First, contrary to Plaintiffs' assertion, *Mars* did not "expressly recognize[]," (*see* Pl. Opp'n. Br. at 13), that a patent holder could recover its subsidiary's lost sales if the subsidiary's profits "flowed inexorably" to the patent holder. As discussed *supra*, the *Mars* court left this question unanswered. Second, even if the *Mars* court had held that a patent holder could recover a subsidiary's lost sales under an "inexorable flow" theory, such a holding would not help Plaintiffs. The "inexorable flow" theory of damages that the *Mars* court declined to resolve contemplates a parent patent holder attempting to recover for an injury to its subsidiary. The facts of this case present a reverse situation – a subsidiary patent holder (i.e., Altana) attempting to recover for injury to its parent (i.e., Germany Holding). The Court is unaware of any binding authority entitling a subsidiary patent holder to recover damages for injuries to its non-patent holding parent.[4]

For these reasons, this Court holds that Altana lacks standing to recover the debt restructuring costs incurred by Germany Holding. As Altana lacks standing to recover damages

---

[4] The Court notes that the cases on which the parties rely do not specifically address a patent holder's entitlement to consequential damages, but to lost profits and royalties. The Court finds these cases instructive for the purpose of deciding the issue presented in the instant motion for summary judgment in light of the apparent lack of authority specifically addressing a patent holder's entitlement to consequential damages under the circumstances presented in this case.

11

incurred by Germany Holding, the Court need not address whether such damages were an actual or proximate cause of Defendants' infringement of the '529 patent.

## **CONCLUSION**

For the reasons set forth above, Defendants' motion for partial summary judgment as to Altana's entitlement to recover as consequential damages the $99.6 million portion of the costs and fees that Germany Holding paid in connection with Nycomed's debt restructuring is **granted**.

An appropriate Order accompanies this Opinion.

Dated: 26 of March 2013.

JOSE L. LINARES
U.S. DISTRICT JUDGE