**NOT FOR PUBLICATION**                                    **FILED UNDER SEAL**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| ALTANA PHARMA AG and WYETH,<br><br>Plaintiffs,<br><br>v.<br><br>TEVA PHARMACEUTICALS USA, INC., et al.,<br><br>Defendants. | Civil Action No. 04-2355 (JLL)<br><br>OPINION |

**LINARES,** District Judge.

This matter comes before the Court by way of Defendants Sun Pharmaceutical Industries, Ltd, Sun Pharmaceutical Advanced Researched Centre, Ltd., and Sun Pharma Global, Inc. (collectively "Sun")'s motion *in limine* seeking: (1) to exclude Dr. Christopher Vellturo's expert opinions concerning how Plaintiffs' price erosion damages should be allocated between Sun and Teva Pharmaceuticals, Inc. ("Teva") pursuant to Fed. R. Evid. 702 and 403 and (2) to preclude Dr. Ryan Sullivan from testifying "about price erosion with respect to Sun's actions" pursuant to Fed. R. Evid. 702 and 403. The Court has considered the submissions made in support of and in opposition to Sun's motion, and decides this matter without oral argument pursuant to Fed. R. Civ. P. 78. For the reasons set forth below, Sun's motion is **DENIED** in its entirety.

**I.   BACKGROUND**

Because the Court has extensively set forth the facts of this case in numerous summary judgment opinions, only those facts specifically pertinent to the instant motion are discussed below.

1

### A. Dr. Vellturo's Opinion regarding Allocation of Price Erosion Damages

Dr. Vellturo—an economist—is Plaintiff Altana Pharma AG and Wyeth (collectively "Plaintiffs")'s damages expert. In his expert report, Dr. Vellturo opines that to the extent that Plaintiffs' price erosion damages are divisible between Teva and Sun, Teva is responsible for 70% (or $825 million) of the damages and Sun is responsible for 30% (or $350 million). Dr. Vellturo's allocation of price erosion damages is based on Teva and Sun's respective shares of sales of infringing pantoprazole during the relevant period. In addition to allocating price erosion damages based on Teva and Sun's market share, Dr. Vellturo also considered the sequence in which Teva and Sun entered the market as a means of allocating price erosion damages between Teva and Sun. According to Dr. Vellturo, the calculations based on the sequence methodology generated "an apportionment of price erosion . . . that is very similar to that obtained under the market share-based attribution methodology." (CM/ECF No. 1310-2 at 68, ¶ 169.)

### B. Dr. Sullivan's Opinion regarding Sun's Contribution to Price Erosion Damages

Dr. Sullivan is an economist who is expected to testify about the extent to which Teva's infringement of the '579 patent caused Wyeth's lost profit damages. In his report, Dr. Sullivan opines that "Dr. Vellturo's methods for allocating price erosion [between Teva and Sun] are flawed." (CM/ECF No. 1273-1 at 12, ¶ 105.) Specifically, Dr. Sullivan opines that Teva is responsible for no more than $299 million in price erosion damages. (*See* CM/ECF No. 1308 at 3.) Dr. Sullivan also asserts that other independent factors, including Sun's actions, caused further price erosion. (*See id.* at 4.)

2

## II. LEGAL STANDARD

### A. General Standard for Deciding Motions *In Limine*[1]

District Courts have broad discretion "in determining the admissibility of evidence under the Federal Rules." *See United States v. Abel*, 469 U.S. 45, 54 (1984). Courts may exercise this discretion to rule on motions *in limine* "to narrow the evidentiary issues for trial and to eliminate unnecessary trial interruptions." *Bradley v. Pittsburgh Bd. of Educ.*, 913 F.2d 1064, 1069 (3d Cir. 1990). It is generally appropriate, however, for courts to reserve judgment on a motion *in limine* until trial. *See, e.g., Kraemer v. Franklin & Marshall College*, No. 95-0020, 1995 U.S. Dist. LEXIS 17093, at *3-4 (E.D. Pa. Nov. 15, 1995) ("The Court declines to rule on whether to exclude . . . testimony before it has been placed into a specific context at trial."); *see also Hawthorne Partners v. AT&T Technologies, Inc.*, 831 F. Supp. 1398, 1400 (N.D. Ill. 1993) ("This court has the power to exclude evidence in limine only when evidence is clearly inadmissible on all potential grounds").

### B. Standard for Admissibility of Expert Testimony

The admissibility of expert testimony is governed by Fed. R. Evid. 702, which provides as follows:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) The expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) The testimony is based on sufficient facts or data;

---

[1] Under Federal Circuit precedent, regional circuit law governs evidentiary questions. *See, e.g., Meyer Intellectual Props. Ltd. v. Bodum, Inc.*, 690 F.3d 1354, 1371 (Fed. Cir. 2012) ("We review the district court's decision to exclude evidence under the law of the relevant circuit."). Accordingly, Third Circuit precedent guides this Court's evidentiary determinations.

3

(c) The testimony is the product of reliable principles and methods; and

(d) The expert has reliably applied the principles and methods to the facts of the case.

The Third Circuit has held that Rule 702 "embodies a trilogy of restrictions on expert testimony: qualification, reliability and fit." *Schneider v. Fried*, 320 F.3d 396, 404 (3d Cir. 2003) (citations omitted). To satisfy the qualification requirement, a witness must "possess specialized expertise." *Id.* at 404. This requirement is interpreted liberally; "a broad range of knowledge, skills, and training qualify an expert as such." *In re Paoli R.R. Yard Pcb Litig.*, 35 F.3d 717, 741 (3d Cir. 1994). To be reliable, there must be a "link between the facts [underlying the expert's opinion] and the conclusion." *ZF Meritor, LLC v. Eaton Corp.*, 696 F.3d 254, 291 (3d Cir. 2012); *see also Kumho Tire*, 526 U.S. 137, 157 (1999) (observing that courts are not required "to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert") (internal citations omitted). Finally, the question as to whether an expert's proffered testimony is a fit is one of relevance that requires the court to determine whether the proffered testimony "will aid the jury in resolving a factual dispute." *See Lauria v. AMTRAK*, 145 F.3d 593, 599-600 (3d Cir. 1998) (quoting *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579, 591 (1993)).

It is well settled that district courts must serve a "gatekeeping function" to ensure that an expert's testimony satisfies the requirements of Rule 702. *See, e.g., Daubert*, 509 U.S. at 592-95; *Kumho Tire Co.*, 526 U.S. at 141. In performing this function, courts must be mindful that Rule 702 "has a liberal policy of admissibility." *Pineda v. Ford Motor Co.*, 520 F.3d 237, 243 (3d Cir. 2008). Indeed, the Third Circuit has observed that the standard for admissibility "is not intended to be a high one." *Oddi v. Ford Motor Co.*, 234 F.3d 136, 145 (3d Cir. 2000). The

4

proponent of expert testimony need not prove that its expert is correct, but that the expert's "opinion is based on valid reasoning and a reliable methodology." *Id.* at 146. "The analysis of conclusions themselves is for the trier of fact when the expert is subject to cross-examination. *Id.*; *see also ZF Meritor*, 696 F.3d at 290 (holding that mere existence of evidence in the record that contradicted expert's conclusion was no basis to exclude expert's testimony).

C. Standard for Exclusion of Testimony under Rule 403

Even if relevant, expert testimony may be excluded under Rule 403. *See, e.g., Daubert*, 509 U.S. at 595. Rule 403 allows district courts to exclude relevant evidence "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. "Pretrial Rule 403 exclusions should rarely be granted." *In re Paoli R. Yard PCB Litig.*, 916 F.2d 829, 859-60 (3d Cir. 1990) ("In sum, we hold that in order to exclude evidence under Rule 403 at the pretrial stage, a court must have a record complete enough on the point at issue to be considered a virtual surrogate for a trial record."). *Id.* at 859.

III. DISCUSSION

The Court will now turn to the merits of Sun's motion seeking to exclude (1) Dr. Vellturo's opinion on price erosion allocation and (2) Dr. Sullivan's testimony concerning the effect of Sun's actions on the price of pantoprazole.

1. Sun's Motion as to Dr. Vellturo

Sun urges this Court to exclude Dr. Vellturo's opinions regarding price erosion allocation because his conclusions (a) are based on a flawed methodology and (b) will confuse and mislead the jury.

5

a. <u>Dr. Vellturo's Methodology</u>

Sun argues that Dr. Vellturo's market-share methodology is flawed because Dr. Vellturo has not justified its use or confirmed its validity in this case. Sun also contends that Dr. Vellturo's alternative methodology for allocating price erosion (i.e., analyzing the sequence in which Teva and Sun entered the market) is unreliable because it is premised on faulty and irrelevant assumptions contained in a Teva forecasting document. Finally, Sun maintains that Dr. Vellturo's opinions on price erosion allocation must be excluded because his analysis "ignores essential facts of this case." (CM/ECF No. 1277 at 8.) Among the facts which Sun claims Dr. Vellturo has ignored are: (1) the temporal relationship between the occurrence of price erosion and the timing of Sun's sales; (2) the fact that the sale of 159 million Sun tablets to CVS did not cause a reduction in the price of pantoprazole tablets; and (3) the impact of Wyeth's generic on the price of pantoprazole.

At the outset, it bears mentioning that Dr. Vellturo's approach of allocating price erosion among defendants based on their respective shares of the infringing market has been recognized with approval by a district court in an opinion affirmed by the Federal Circuit. *See In re Mahurkar Patent Litig.*, 831 F. Supp. 1354, 1392 (N.D. Ill. 1993) (Easterbrook, J.) (approving market-share approach for allocating price erosion damages), *affirmed* 71 F.3d 1573 (Fed. Cir. 1993). Sun concedes that Dr. Vellturo's methodology partially follows the market-share approach for calculating price erosion damages that was endorsed in *Mahurkar*. (*See* CM/ECF No. 1277 at 13.) Nevertheless, Sun maintains that the *Mahurkar* approach requires "a secondary more detailed analysis of price erosion" that Dr. Vellturo has failed to perform. (*Id.*)

Sun's argument that Dr. Vellturo's testimony should be excluded on account of the purported flaws in his methodology is unpersuasive. First, the *Mahurkar* court did not explicitly

hold that the admissibility of a damages expert's testimony regarding price erosion is contingent upon said expert validating his methodology by conducting a "secondary more detailed analysis." Thus, any failure on the part of Dr. Vellturo to validate his methodology is an insufficient ground upon which to exclude his testimony. More importantly, flaws in Dr. Vellturo's methodology, standing alone, do not justify excluding his testimony. *See, e.g., Oddi.*, 234 F.3d at 145; *Voilas v. General Motors Corp.*, 73 F. Supp. 2d 452, 461-62 (D.N.J. 1999) ("[T]he perceived flaws in an expert's testimony often should be treated as matters properly to be tested in the crucible of the adversarial system, not as the basis for truncating that process.") (citations and internal quotation marks omitted); *Wicker v. CONRAIL*, 371 F. Supp. 2d 702, 712 (W.D. Pa. 2005) ("[A] flaw in methodology does not automatically disqualify an expert opinion") (citing *Paoli*, 35 F.3d at 746). To justify excluding Dr. Vellturo's testimony *in limine*, any flaw in his methodology "must be of such substance to create a lack of 'good grounds'" for his conclusions. *See Wicker*, 371 F. Supp. 2d at 712.

The Court is not convinced that any potential flaws in Dr. Vellturo's methodology are of such substance as to warrant exclusion at this juncture. Notably, Sun does not argue that a nexus is completely lacking between Dr. Vellturo's opinions and the facts of this case. Rather, Sun argues that Dr. Vellturo's analysis fails to account for essential facts, and in some instances, is based on faulty premises. This argument may be a valid basis upon which a reasonable jury may decide not to credit Dr. Vellturo's opinions. It is not, however, a basis upon which to exclude Dr. Vellturo's testimony *in limine*. *See, e.g., Stecyk v. Bell Helicopter Textron, Inc.*, 295 F.3d 408, 414-15 (3d Cir. 2002) ("A party confronted with an adverse expert witness who has sufficient, though perhaps not overwhelming, facts and assumptions as the basis for his opinion can highlight those weaknesses through effective cross-examination); *see also United States v.*

7

*Mitchell*, 365 F.3d 215, 244 (3d Cir. 2004) ("As long as an expert's scientific testimony rests upon 'good grounds, based on what is known,' it should be tested by the adversary process—competing expert testimony and active cross-examination—rather than excluded from jurors' scrutiny for fear that they will not grasp its complexities or satisfactorily weigh its inadequacies.") (quoting *Ruiz-Troche v. Pepsi Cola Bottling Co.*, 161 F.3d 77, 85 (1st Cir. 1998)).

    b.    <u>Whether Dr. Vellturo's Opinion on Price Erosion Allocation should be Stricken Because it will Confuse and Mislead the Jury</u>

Sun maintains that "Dr. Vellturo's allocation opinions should be stricken pursuant to Fed. R. Evid. 403 because they confuse the issues related to price erosion and mislead the jury by presenting an over-simplified analysis of price erosion." (CM/ECF No. 1277 at 18.) This argument is unpersuasive. Sun is free to attempt to persuade the jury that Dr. Vellturo's analysis is over-simplified. As discussed above, Sun is also free to attempt to expose the flaws it asserts exist in Dr. Vellturo's methodology. The Court will not, however, take the extraordinary step of excluding Dr. Vellturo's testimony at this juncture on Rule 403 grounds. *See, e.g., In re Paoli R. Yard PCB Litig.*, 916 F.2d at 859-60.

    2.    <u>Sun's Motion as to Dr. Sullivan</u>

Sun argues that this Court should preclude Dr. Sullivan from testifying about the effect of Sun's actions on price erosion for two reasons: (a) Dr. Sullivan's testimony does not concern any specialized knowledge that would help the jury and (b) Dr. Sullivan's testimony about the effect of Sun's actions on the price of pantoprazole would confuse or mislead the jury. (*See generally* CM/ECF No. 1276.)

    a.    <u>Whether Dr. Sullivan's Testimony Concerns Specialized Knowledge that would be Helpful to the Jury</u>

According to Sun, "Dr. Sullivan's testimony . . . [about Sun's impact on] price erosion does not fit because he admits that he has 'not made a specific endeavor to determine whether or to the [sic] extent that Sun has caused price erosion.'" (CM/ECF No. 1276 at 3.) Specifically, Sun maintains that Dr. Sullivan has merely catalogued evidence which "he believes ties Sun's actions to price erosion and then suggest[ed] inferences that the jury should draw." (*Id.* at 5.) Thus, Sun argues, Dr. Sullivan's testimony about the effects of Sun's actions on the price of pantoprazole "would be improper under . . . [Rule] 702 because it does not concern any specialized knowledge and because it would not be helpful to the jury." (*Id.* at 6.)

Sun's argument is unavailing. The record suggests that Dr. Sullivan did, in fact, perform economic analysis on how Sun's actions affected pantoprazole prices. By way of example, Dr. Sullivan has opined that (1) Plaintiffs have attributed too much of the price erosion to Teva by "not account[ing] for the fact that Wyeth reacted to Sun's pre-launch offers when it set the launch price of Wyeth OG;" (2) "Sun and Wyeth caused price reductions by competing with each other for accounts;" and (3) "it is unreasonable to allocate the majority of the price reduction" between December 24, 2007 and mid-June 2008 to Teva because "Teva did not distribute new generic pantoprazole" during this time in which Sun made "offers below Teva's prices." (*See* CM/ECF No. 1308 at 4.)

Additionally, the issues that Dr. Sullivan addresses (i.e., price erosion and market forces leading to the decline in the price of pantoprazole) are beyond the ordinary knowledge of the lay juror. *See, e.g., Accentra Inc. v. Staples, Inc.*, No. CV 07-5862 ABC (RZx), 2010 WL 8450890, at *7-8 (C.D. Cal. Sept. 22, 2010) (excluding evidence of price erosion because plaintiff put forward no expert on the topic and "the theories of price erosion and convoyed sales are matters for expert testimony"); *LG Electronics U.S.A., Inc. v. Whirlpool Corp.*, No. 08 C 242, 2010 WL

9

3397358, at *9 (N.D. Ill. Aug. 24, 2010) (permitting expert testimony on price erosion). Accordingly, the Court is satisfied that expert testimony shedding light on these issues is helpful to the jury.

To the extent that Sun believes that there are flaws with Dr. Sullivan's methodology, it may attempt to expose those flaws at trial. Additionally, should Sun fail to establish a foundational basis for any testimony that Dr. Sullivan offers at trial, Sun is free to raise an objection at that time. However, Sun's disagreement with Dr. Sullivan's conclusions and methodology is no reason categorically to preclude Dr. Sullivan from testifying about Sun's impact on price erosion at this juncture.

  b. <u>Whether Dr. Sullivan's Testimony Should be Excluded because it would Confuse or Mislead the Jury</u>

Sun argues that Dr. Sullivan's testimony should be excluded under Rule 403 for two reasons. First, Sun maintains that Dr. Sullivan's proffered testimony would be cumulative in that it would "simply highlight[] certain documents and testimony that the jury should have the opportunity to see and hear for itself." Second, Sun argues that Dr. Sullivan's testimony about of the effect of Sun's actions on the price of pantoprazole would confuse and mislead the jury. Neither of these arguments is persuasive. (CM/ECF No. 1276 at 7.)

As to Sun's first argument, the Court is not convinced that Dr. Sullivan will merely repeat the contents of the documents and testimony he has reviewed. Rather, as discussed above, Dr. Sullivan is expected to testify about the opinions he has reached based on his analysis of these documents and testimony. The jury is free to accept or reject Dr. Sullivan's conclusions. *See, e.g, Oddi*, 234 F.3d at 146. The fact that Dr. Sullivan's conclusions are based on his analysis of evidence that may otherwise be admitted at trial is no reason to preclude Dr. Sullivan from testifying on Rule 403 grounds.

10

Sun's second argument relies heavily on *Tuli v. Brigham & Women's Hosp., Inc.*, 592 F. Supp. 2d 208 (D. Mass. 2009). In *Tuli*, the court excluded the proffered testimony of two physicians in a sex discrimination case. Specifically, the *Tuli* court excluded the testimony of a surgeon because his opinion that the plaintiff was not subject to discrimination fell outside his area of expertise and would "not assist the trier of fact." See *Tuli*, 592 F. Supp. 2d at 212. The *Tuli* court also excluded the testimony of a neurologist claiming to be an expert in the field of "sham peer review" because "sham peer review" is not a recognized field of expertise and the neurologist's opinions amounted to conclusory "value judgments that [could] not be reviewed." *Id.* at 213.

The reasoning in *Tuli* does not persuade this Court to exclude Dr. Sullivan's proffered testimony on Rule 403 grounds for two reasons. First and foremost, this Court is not bound by decisions of other district courts; therefore, even if *Tuli* supported excluding Dr. Sullivan's testimony, this Court would decline to follow that case. Second, unlike the experts in *Tuli*, there is no dispute that Dr. Sullivan is a qualified expert in a recognized area of expertise, that is, economics.

## IV. CONCLUSION

For the foregoing reasons, the Court denies Sun's motion seeking (1) to exclude Dr. Vellturo's expert opinions concerning how Plaintiffs' price erosion damages should be allocated between Sun and Teva pursuant to Fed. R. Evid. 702 and 403 and (2) to preclude Dr. Sullivan from testifying "about price erosion with respect to Sun's actions" pursuant to Fed. R. Evid. 702 and 403. An appropriate Order follows.

Dated: 14th of May 2013.

JOSE L. LINARES
U.S. DISTRICT JUDGE